United States Court of Appeals,

Fifth Circuit.

No. 94-60136.

WESTERN HERITAGE INSURANCE COMPANY, Plaintiff-Appellant,

v.

MAGIC YEARS LEARNING CENTERS AND CHILD CARE, INC., et al.,
Defendants,

Magic Years Learning Centers and Child Care, Inc., Charles R.
Wilson, and Doris J. Wilson, Defendants-Appellees.

Feb. 16, 1995.

Appeal from the United States District Court for the Southern
District of Texas.

Before JONES and STEWART, Circuit Judges, and DUPLANTIER,[*] District
Judge.

DUPLANTIER, District Judge:

Charles R. Wilson and his wife Doris J. Wilson operate Magic
Years Learning Centers and Child Care, Inc. (Magic Years), a child
day care center. Mr. Wilson serves as president of Magic Years,
and his wife is its secretary and treasurer. Theresa L. Alexander,
a former employee of Magic Years, and her husband filed suit in
state court against Magic Years and Mr. and Mrs. Wilson, claiming
that Mr. Wilson sexually harassed Mrs. Alexander. Western Heritage
Insurance Company (Western Heritage) insured Magic Years and Mr.
and Mrs. Wilson during the period of Mrs. Alexander's employment.
In this suit for declaratory judgment, the district court decreed
that Western Heritage must defend its insureds, Magic Years and Mr.

---

[*]District Judge for the Eastern District of Louisiana,
sitting by designation.

1

and Mrs. Wilson, in the underlying state court action brought by the Alexanders and pay any judgment rendered against them.  Western Heritage appealed.[1]  We AFFIRM the judgment in favor of Mr. and Mrs. Wilson, but we REVERSE the judgment in favor of Magic Years.

Mrs. Alexander was an employee of Magic Years for slightly over sixteen months.  During that time, the Western Heritage comprehensive general liability insurance policy at issue listed "Charles & Doris Wilson dba Magic Years Learning Center and Child Care, Inc." as the named insured.  All the parties treat this strange designation as referring to three insureds:  Mr. Wilson, Mrs. Wilson and the corporation.

The state court suit by the Alexanders alleged that Mr. Wilson sexually harassed Mrs. Alexander at work and under other circumstances, that such harassment led to her constructive discharge, that he invaded her right to privacy by asking probing questions about her personal life and sexual activities, that he unlawfully imprisoned her, that the harassment and her constructive discharge violated her federal and state civil rights, that he committed assault and battery by touching her in an offensive, unwelcome manner, and that he acted with such want of care and conscious indifference as to warrant punitive damages.  The Alexanders claimed that Mrs. Wilson and Magic Years were responsible under the doctrine of respondeat superior for Mr.

---

[1]The Alexanders also sought exemplary damages in their state court suit.  Magic Years and the Wilsons do not dispute the district court's declaration that exemplary damages are specifically excluded by the insurance policy and hence not covered.

2

Wilson's conduct and that they were grossly negligent in entrusting him with supervisory responsibility, in not providing a workplace free of sexual harassment, and in not providing an adequate avenue for redress. They also alleged that Magic Years and the Wilsons intentionally inflicted severe emotional distress upon Mrs. Alexander. Mr. Alexander asserted a claim for loss of consortium. Magic Years and the Wilsons made demand upon Western Heritage to defend them in the state court suit and to pay any judgment arising out of it.

Western Heritage filed this action seeking a declaration that it owed no duty to defend or indemnify Magic Years or the Wilsons in the underlying state court suit; in a counterclaim Magic Years and the Wilsons sought a declaration that Western Heritage must defend and indemnify them. The parties filed cross motions for summary judgment with a stipulation that the policy and the Alexanders' pleadings in the underlying state court suit constituted the relevant evidence.

The district court held that the policy covered the Alexanders' state court claim and that the employer exclusion clause did not exclude coverage, because some of the allegations concerned conduct that occurred outside the course of Mrs. Alexander's employment.

Western Heritage contends that the policy's definition of occurrence does not cover sexual harassment, and, even if it does, the allegations in the Alexanders' suit are excluded from coverage by the assault and battery exclusion endorsement. Western Heritage

3

further contends that if the state court claims are otherwise covered, they are excluded by the employer liability exclusion clause.

*TEXAS LAW*

Texas substantive law controls this diversity jurisdiction case. Under Texas insurance law, an insurer is required to defend any case in which at least some of the allegations in the pleadings present a claim covered by the policy. *See Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp.,* 1 F.3d 365, 369 (5th Cir.1993). In determining whether the policy covers the allegations, the court must enforce the policy as written if it can be given only one reasonable construction. *Nat'l Union Fire Ins. Co. v. Hudson Energy Co., Inc.,* 811 S.W.2d 552, 555 (Tex.1991). However, if the insurance policy is ambiguous, susceptible of more than one reasonable interpretation, the court must adopt the construction that most favors the insured. *Id.; Barnett v. Aetna Life Ins. Co.,* 723 S.W.2d 663, 665 (Tex.1987). Because exceptions and limitations of liability are even more strictly construed against the insurer, " "we must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not itself unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent.' " *Barnett,* 723 S.W.2d at 666 (quoting *Glover v. Nat'l Ins. Underwriters,* 545 S.W.2d 755, 761 (Tex.1977)). Therefore, we must read the allegations of the underlying state court suit in light of the

4

policy's insuring provisions and exclusions to determine whether there is coverage, bearing in mind these liberal rules of construction in favor of the insured.

### "OCCURRENCE"

The insuring provision in the policy reads as follows:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

(a) bodily injury or

(b) property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury....

Therefore, to trigger the duty to defend, the pleadings in the underlying state court suit must allege facts which constitute bodily injury caused by an occurrence that the policy does not exclude.

The policy defines an occurrence as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."[2]  Western Heritage contends that the definition of occurrence excludes intentionally inflicted injuries and therefore excludes the allegations which arise out of sexual harassment because Mr. Wilson intended or expected to injure Mrs. Alexander when he harassed her and touched her in an

---

[2]The policy defines bodily injury as "physical injury, sickness or disease sustained by any person which occurs during the policy period...."

offensive, unwelcome manner.  With respect to the Alexanders' state court suit, the general policy definition of occurrence is trumped by the following special endorsement:

**Physical and/or Mental Abuse Limitation Endorsement**

In consideration of the premium charged, it is hereby understood and agreed that Bodily Injury and Property Damage includes any act, which may be considered <u>sexual in nature</u> and <u>could</u> be classified as an Abuse, Harassment, Molestation, Corporal Punishment or an Invasion of an individual's right of Privacy or control over their physical and/or mental properties by or at the direction of an Insured, an Insured's employee or any other person involved in any capacity of the Insured's operation....

\* \* \* \* \* \*

Severability of Insurance

This insurance applies separately to each Insured....

(underlining emphasis added).

Regardless of whether the general definition of occurrence would exclude allegations of sexual harassment by the insured, the endorsement expressly provides for coverage of such claims.  To hold otherwise would render the endorsement meaningless.  *See Barnett,* 723 S.W.2d at 666 (stating that a court should read a contract, including an insurance policy, to give effect to each part of the contract unless doing so would do violence to the rules of law or construction).

The alleged acts of Mr. Wilson complained of in the underlying state court suit are covered by the endorsement because they all "may be considered sexual in nature and could be classified as an Abuse, Harassment, Molestation, Corporal Punishment or an Invasion of an individual's right of Privacy."  Alternatively, from the

6

standpoint of Magic Years and Mrs. Wilson,[3] not only do the allegations in the underlying state court suit fall within the endorsement, but the alleged acts or omissions are within the general definition of occurrence, because there is no contention that Mrs. Wilson or Magic Years expected or intended to injure the Alexanders. *See Walker v. Lumbermens Mut. Casualty Co.,* 491 S.W.2d 696 (Tex.Civ.App.1973) (holding that exclusion of intentional acts in homeowner's policy does not apply to parent who is being held liable for son's intentional acts).

*ASSAULT AND BATTERY EXCLUSION*

Western Heritage also contends that the allegations involving assault and battery and offensive touching are excluded from coverage by the following assault and battery exclusion endorsement:

> It is agreed that the insurance does not apply to bodily injury or property damage arising out of assault and battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of the insured, his employees, patrons or any other person.

The underlying state court suit is based upon alleged sexual harassment, expressly covered by the policy's "physical and/or mental abuse limitation endorsement." The allegations of assault and battery, unlawful imprisonment, and intentional infliction of emotional distress are alternative legal theories of liability for the alleged sexual harassment. The physical/mental abuse endorsement would be meaningless with respect to claims of physical

---

[3]The endorsement, which contains a severability of insurance clause, must be applied separately to each insured.

abuse if the assault and battery exclusion were applicable. The assault and battery exclusion is trumped by this special endorsement, just as is the definition of occurrence.

### *EMPLOYER LIABILITY EXCLUSION*

Western Heritage also argues that the allegations in the state court suit are excluded by the following employer liability exclusion clause:

This insurance does not apply:

(i) to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured for which the insured may be held liable as an employer or in any other capacity;  * * * or

(iii) to bodily injury sustained by the spouse, child, parent, brother, or sister of an employee of the insured as a consequence of bodily injury to such employee arising out of and in the course of his employment by the insured.

The policy defines an "insured" as:

any person or organization qualifying as an insured in the "Persons Insured' provision....  The insurance afforded applies separately to each Insured against whom claim is made or suit is brought, except with respect to the limits of the Company's liability.

By this employer liability exclusion, Western Heritage may have intended to exclude coverage of claims by "any employee" of *any* insured, but it did not do so.  Instead, the policy excludes coverage of claims by "any employee of *the* insured."  (emphasis added).  The author of the policy knew how to write the word "any", for he used it to modify "employee", but *not* "insured."

The definition of an "insured" in the policy provides that "[t]he insurance afforded applies separately to each Insured against whom claim is made or suit is brought."  The "physical

8

and/or mental abuse limitation endorsement," which provides for coverage of the claims at issue, states that "[t]his insurance applies separately to each Insured."  Thus a claim against one insured may be covered, even though the same claim against another insured is excluded.  *See Commercial Standard Ins. Co. v. Am. Gen. Ins. Co.,* 455 S.W.2d 714 (Tex.1970) (holding that the employee exclusion clause is to be applied separately to each insured who may be entitled to coverage whenever the policy contains a severability of interests clause).  Mindful that we must adopt any construction of an exclusionary clause urged by the insured as long as it is not unreasonable, *Barnett,* 723 S.W.2d at 666, we must read the employer liability exclusion as applying separately to each insured, excluding coverage of an insured only if that insured is the employer of the injured party or the party's spouse.[4]

The employer liability exclusion does not apply to Mr. and Mrs. Wilson, neither of whom was Mrs. Alexander's employer, but it does apply to Magic Years, which was her employer.  *See Guaranty Nat'l Ins. Co. v. Marshall County Bd. of Educ.,* 540 So.2d 745, 749

---

[4]Two recent decisions, one by a Texas Court of Appeals and one by this circuit, apply an employer liability exclusion clause to exclude coverage of both a corporate employer and an individual.  In the Texas case, *Aberdeen Insurance Company v. Bovee,* the individual was apparently a co-employee.  777 S.W.2d 442 (Tex.Ct.App.1989).  In the federal case, *Pennsylvania National Mutual Casualty Insurance Co. v. Kitty Hawk Airways, Inc.,* the individual was the vice-president and "co-owner" of the corporate defendant.  964 F.2d 478, 479 (5th Cir.1992).  In contrast with the instant Western Heritage policy, apparently neither the Aberdeen nor the Pennsylvania National policy contained a "severability of insurance" clause, and therefore neither of those decisions consider the relationship between the term "employer" and an individual who is not an employer but is an insured.

(Ala.1989) (holding that employer liability exclusion clause does not exclude coverage of claim of deceased employee against his supervisors); *Great S.W. Fire Ins. Co. v. Hercules Bldg. & Wrecking Co., Inc.,* 35 Mass.App.Ct. 298, 619 N.E.2d 353 (1993) (holding that general comprehensive liability insurance policy with employer liability exclusion clause covered claims by an employee against the owner/president/manager but not those against the company), *review denied,* 416 Mass. 1106, 622 N.E.2d 1364 (1993).

All of the claims against Magic Years are excluded by the employer liability exclusion clause, because Magic Years employed Mrs. Alexander, the claims arose out of the course of her employment, and the exclusion specifically applies to the derivative claims of the injured employee's spouse. *See Old Republic Ins. Co. v. Comprehensive Health Care Assoc., Inc.,* 2 F.3d 105, 109 (5th Cir.1993) (stating that the employment-related exclusion "broadly covers virtually any claim arising out of the employment relationship").

Unlike the limiting language in the definition of "occurrence" and the assault and battery exclusion, either of which if applicable here would render the policy's "physical and/or mental abuse limitation endorsement" meaningless, the employer liability exclusion can be read together with the sexual claim endorsement. Claims by a non-employee of an insured "which may be considered sexual in nature" are covered by the policy, e.g., the claims against Mr. and Mrs. Wilson; such claims by an employee of an insured are excluded from coverage.

10

For the foregoing reasons, we AFFIRM the district court's judgment in favor of Mr. and Mrs. Wilson, REVERSE the judgment in favor of Magic Years, and REMAND with instructions to enter judgment in favor of Western Heritage declaring that Western Heritage is not obligated to defend or indemnify Magic Years in the underlying state court suit.