PICKERING, Circuit Judge,
specially concurring in part and dissenting in part:
I concur with the majority as to the result reached in this case as to Greene, PinkMonkey’s chief executive, and the result reached as to all of the other directors of the company, except White. I do not agree that this case should be affirmed as to the securities dealer, John Kim, and director of PinkMonkey, White. I likewise do not agree that the decision should be affirmed as to PinkMonkey. Consequently I respectfully dissent as to PinkMonkey, Kim and White.
The Chee parties argue that under the holding of Alstrin v. St. Paul Mercury Insurance Co., 179 F.Supp.2d 376 (D.Del.2002), the judgment against all defendants should be reversed based upon the argument that the exclusion takes away the coverage granted by the insuring agreement. The problem with that argument is that it is contrary to the holding of this Court, interpreting Texas law in Jarvis Christian College v. National Union Fire Insurance Co. of Pittsburgh, Pennsylvania, 197 F.3d 742 (5th Cir.1999). Consequently, I agree with the majority that the decision as to Green should be affirmed. The policy at issue also specifically provides that an insured cannot settle without the consent of the insurer. Since the directors other than White settled without the consent of the insurer, I would also affirm as to those directors. As to director White there was a default judgment and as to securities agent Kim there was a finding of liability based upon negligent misrepresentation.
I.
Under well established Texas law, “if a contract of insurance is susceptible of more than one reasonable interpretation, we must resolve the uncertainty by adopting the construction that most favors the insured.” National Union Fire Ins. Co. of Pittsburgh v. Hudson Energy Co., Inc., 811 S.W.2d 552, 555 (Tex.1991) (citations omitted) (emphasis added). The Hudson court held “[i]n particular, exceptions or limitations on liability are strictly construed against the insurer and in favor of the insured.” Id. (citations omitted) (emphasis added). The Hudson court went on to say “[t]he court must adopt the construction of an exclusionary clause urged by the insured as long as that construction *374 is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties’ intent.” Id. (citations omitted) (emphasis added).
The Fifth Circuit, in summarizing Texas law, set out the above principles and noted specifically that “exceptions and limitations of liability are even more strictly construed against the insurer.” Western Heritage Ins. Co. v. Magic Years Learning Centers and Child Care, Inc., 45 F.3d 85, 88 (5th Cir.1995) (emphasis added). “An intent to exclude coverage must be expressed in clear and unambiguous language ...” Hudson, 811 S.W.2d at 555 (emphasis added). The case before this Court involves an exception, or exclusion.
The policy in question is a “DIRECTOR AND OFFICER LIABILITY POLICY” comprised of nine sections, numbered with Roman numerals, I through IX, plus an Endorsement. Section I.A. provides “[w]e shall pay on behalf of each Insured all loss for which the Insured is not indemnified by the Company which the Insured becomes legally obligated to pay ...” Section I.B. provides “[w]e shall pay on behalf of the Company all loss for which the Company grants indemnification to each insured ...” Section I.C. provides “[w]e shall pay on behalf of the Company all losses for which the Company becomes legally obligated to pay because of any Securities Claim ...” The endorsement added a definition of a securities claim as follows: “ ‘Securities Claim’ means a claim made against an Insured or the Company alleging a violation of the Securities Act ...” (emphasis added).
The Definition section of the policy defines the word “Insured” as being a “director” or an “officer” of the company. Both officer and director are singular words. Although the company is covered as to a securities claim, the company itself is not covered under other provisions of the policy and is not defined as an “Insured.” The policy provides that “[t]he written application for coverage shall be construed as a separate application for coverage by each of the Insureds.” (Section “IV. REPRESENTATIONS AND SEVERABILITY”) (emphasis added).
Appellants contend that the exclusion applies only to a claim against an insured who receives a profit or gain to which he or she is not legally entitled. That is not an unreasonable interpretation. The exclusion in question is set out and laid out as follows:
III. EXCLUSIONS
This insurance does not apply to any Claim made against any Insured arising out of any of the following:
«¡i
L. Any Claim based upon, arising from, or in consequence of an Insured having gained in fact any personal profit, remuneration, or advantage to which such Insured was not legally entitled, (emphasis added)
This Exclusion uses the word “Insured” three times. Each time the word “Insured” is singular. Each time it is used, it is modified by a different adjective. Chronologically, “Insured” is modified by “any,” “an,” and “such.” According to the dictionary, “any” means “one,” singular, but it can mean “some,” plural.[1] “An” is clearly singular. “Such insured” refers back to “an insured.” So, the third time the word “insured” is used in the exclusion it clearly *375 refers back to the second time the word insured is used.
According to the dictionary definition, the word “any” can be interpreted as being singular or plural. Consequently, appellants’ contention that it is to be construed as being singular is not unreasonable. Bolstering appellants’ interpretation is the fact that each time the word “insured” is used, it is singular and that the words “such insured” refer back to “an insured.” Again, interpreting the word “any insured” as being singular, and “such insured” as referring back to the specific insured who profited or gained inappropriately, appellants’ construction of the exclusionary clause is not unreasonable.
Accordingly it is not unreasonable to interpret the EXCLUSION as excluding from coverage only a claim against the single insured who gained a profit or advantage to which he was not legally entitled. Such a construction would not exclude the claim against the securities dealer Kim who was found liable for negligent misrepresentation, nor would it exclude the claim against White since he was not found to have inappropriately profited, nor would it exclude the claim against the Company. The interpretation argued for by the appellants is not only a reasonable interpretation, but in the mind of this writer, it is more consistent with the wording of the exclusion.
The majority notes that the jury found that “Green, Kim, and PinkMonkey made negligent misrepresentations to the Chee parties” and that “PinkMonkey and Green committed fraud against the Chee parties!.]” The majority then notes that “insurance coverage under a claim brought solely against Kim could not be excluded under the Personal Profit Exclusion.” So, according to the majority, if appellants had filed their suit against Green, Kim, White,' and PinkMonkey on the theory of negligent misrepresentation, the claim would have been covered but that since they included the fraudulent claim against Green as to which he received inappropriate gain, coverage is excluded. It is incongruous that if appellants had filed against Kim for negligent misrepresentation, such a claim would have been covered, but since they sued Kim, Green and PinkMonkey jointly, the claims are excluded from coverage.
The majority focuses on the words “an insured,” construes the words “an insured” as meaning “any insured” (plural) and concludes that if a claim is excluded based on the actions of any one insured who receives an inappropriate gain or profit, it is barred as to all insureds. While that may be a reasonable interpretation, it is not the only reasonable interpretation. While it is reasonable to interpret “an insured” as meaning any insured, it is also reasonable to interpret “any” insured as a single insured, thus making the exclusion apply only to a claim against the specific insured who received the ill gotten gain. As the Court in the Western Heritage case concluded “[mjindful that we must adopt any construction of an exclusionary clause urged by the -insured as .long as it is not unreasonable, (citation omitted) we must read the employer liability exclusion as applying separately to each insured ...” Western Heritage, 45 F.3d at 90 (emphasis added). .
If “any insured” in the exclusion is interpreted as singular, then the only party barred is the one receiving the inappropriate profit or gain. If that is a reasonable interpretation, the following analysis is superfluous.
II.
Appellants contend that since Section I.C. provides specific coverage for “the *376 Company” as to a securities claim, and since the exclusion does not clearly and unambiguously exclude a claim against the company, that the claim against the company is not excluded. In fact, the exclusionary clause does not exclude a claim against the company at all, much less clearly and unambiguously. Appellants’ interpretation that the exclusionary clause does not exclude a claim against the company is not an unreasonable interpretation. The exclusion specifically excludes “any claim made against any insured” but does not exclude a securities claim against the company. The majority acknowledges that “The Personal Profit Exclusion only applies to claims against an Insured ... Insureds are separate from the Company.” The insured in writing the policy demonstrated in at least three instances that they knew how to make a paragraph apply to both “an insured” and the “company.” As the Texas Supreme Court held in Hudson, “an intent to exclude coverage must be expressed in clear and unambiguous language ...” 811 S.W.2d at 555.
In order to get around the fact that the wording of the exclusion only excludes a claim against an “insured” and not the company, the majority relies on the policy language that “all claims arising from the same wrongful act or interrelated, repeated, or continuous wrongful acts of one or more injured shall constitute a single claim.” The fallacy of this conclusion is that this definition of “claim” is found under Section “V. LIMITS OF LIABILITY” which further states that “the claims shall be subject to a single retention.” Since this definition of “claim” is not found in the Definition section of the policy, but rather is found in the “Limits of Liability” section, it is not unreasonable to construe this definition of “claim” as being applicable only to the limits of liability. It is not unreasonable to interpret this as limiting the insurer’s limits of liability and not the extent of coverage. Particularly is this not an unreasonable interpretation in view of the fact that Section II, the Definition section of the policy, gives the word “claim” an entirely different definition.
TIG “may have intended to exclude coverage of claims [against the company] but it did not do so. Instead, the policy excludes coverage [only, to a claim made against any insured.] The author of the policy knew how to write [an exclusion that would have excluded ‘an insured’ and the ‘company’] for he [made this distinction in at least three different places in the policy].... ” Western Hentage, 45 F.3d at 89. “If [TIG] wanted to exclude [a claim against the company], then it was incumbent upon it to expressly and clearly state the exclusion in the policy. Having failed to do so, [TIG] cannot now complain.” Hudson Energy Co., 811 S.W.2d at 555.
But even more importantly, the majority still ignores appellants’ contention that the Exclusion, narrowly interpreted as we must, excludes a claim against only the insured who received the inappropriate gain or profit.
III.
In ordinary usage the word “claim” can refer to a single theory of liability, or it can refer to an entire lawsuit including multiple theories. In the Definition section of the policy the word “claim” is defined as “ ‘Claim’ means a written demand for monetary damages, including the institution of suit or a demand for arbitration.” (Section II.A. Definition) Quite often one lawsuit will have a number of claims representing the different theories of a lawsuit. Certainly appellants had separate claims against each defendant. The policy, by its own terms, provided for separate coverage as to each insured and the company.
*377 If one uses the definition of “claim” as defined in the Definition section of the subject insurance policy and interprets the word “any” as being singular as the word is defined in the dictionary, the exclusion would read as follows: This insurance does not apply to “a written demand for monetary damages, including the institution of suit” made against “any insured” (one insured) arising out of any of the following: any suit based upon, arising from or in consequence or an insured (one insured) having gained in fact any personal 'profit, remuneration, or advantage of which such insured was not legally entitled. To read the word “company” into this exclusion is less reasonable than to read the company out of the exclusion since TIG clearly knew how to amend the policy and in fact amended the Definition section by the Endorsement in several respects.
The majority writes
Although the terms “the insured” “that insured” or “such insured” preceding personal profit would indicate the same insured as the claim is brought against, the personal profit exclusion uses the more general term “an insured.” This indicates that coverage is excluded for all insureds, not merely the insured who profited, (emphasis added).
Whether the words “an insured” indicates that coverage is excluded for all insureds is not the test. The test is whether or not there is another reasonable interpretation of the exclusion which is to be particularly construed against the insurer. The exclusion is not expressed in clear and unambiguous language as Texas law requires. The above quotation from the majority proves the point of this dissent. The majority finds that the words “an insured” indicates that coverage is excluded for all insureds. The majority notes that the terms “the insured,” “that insured” or “such insured” would indicate the same insured as the claim is brought against, thus providing coverage to appellants. The majority then chooses between these .two indications. It is not enough that an insurance policy indicates that an exclusion is involved, but the exclusion must be stated in clear and unambiguous terms. That the insured did not do.
The majority would be correct if Texas law provided that uncertainties or ambiguities in an insurance policy should be construed in favor of the insurer. But Texas law does not so provide. In fact, Texas law is to the contrary.
I, therefore, specially concur in part and respectfully dissent in part.

. The first definition of the word "any” is “any. 1. Being one (or, pi., some).” Webster’s New Collegiate Dictionary 40 (1958 ed.).