# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

_____

## No. 99-50467
_____

STATE FARM FIRE & CASUALTY INSURANCE COMPANY,

Plaintiff-Appellee

VERSUS

JACLYN GREEN KEEGAN, As Next Friend of Diana Green, a Minor; LINDA GREEN, Administratrix of the Estate of Russell Green,

Defendants-Appellants

_____

Appeals from the United States District Court
For the Western District of Texas, Austin Division
_____

April 18, 2000

Before HIGGINBOTHAM and PARKER, Circuit Judges, and WARD,* District Judge.

_____
* District Judge of the Eastern District of Texas, sitting by designation.

T. JOHN WARD, District Judge:

Jaclyn Green Keegan and Linda Green appeal the district court's summary judgment in favor of State Farm Fire & Casualty Insurance Company (State Farm) finding that State Farm did not have a duty to defend or indemnify the insured under an insurance contract. The district court also denied Jaclyn Green Keegan's motion for summary judgment. We reverse and render.

*Background*

Jaclyn Green Keegan and her daughter Diana Green lived with Jaclyn's parents, Russell and Linda Green. State Farm issued a standard Texas homeowners insurance policy to Russell and Linda Green as named insureds. The policy was effective from March 1995 through March 1996 and insured the Green's residence located on Granada Drive in Georgetown, Texas. In May 1995, Russell and Linda Green separated and Russell Green moved out of the insured residence. Jaclyn Green Keegan and Diana Green continued to live with Linda Green. On November 12, 1995, Russell Green was taking Diana Green back to her mother after a visit to his home, when he stopped to examine an old railroad trestle. Mistakenly believing that the trestle was out of service, he led Diana Green out onto the trestle. While Russell Green and Diana Green were on the trestle, a train approached. Russell Green threw Diana Green out of the path of the oncoming train. Diana Green suffered serious injuries from the fall off the trestle and Russell Green was stuck by the train and killed.

Jaclyn Green Keegan, as next friend of Diana Green, brought suit against the

Union Pacific Railroad Company and the Estate of Russell Green in the 249th District Court, Johnson County, Texas in a case styled *Jaclyn Green Keegan, as Next Friend to Diana Green, a Minor v. Missouri Pacific Railroad, d/b/a Union Pacific Railroad, Matthew Brian Rasch and Russell Green*. The petition alleged that Russell Green was negligent in taking Diana Green onto the trestle and for failing to safely remove her from the trestle. Linda Green answered the suit in her capacity as Administratrix of the Estate of Russell Green and asked State Farm to defend her and to indemnify her for any liability on the part of Russell Green. State Farm undertook Linda Green's defense pursuant to a reservation of rights and instituted a declaratory judgment action in federal court, seeking a declaration that because Diana Green is an "insured" under the terms of the policy, the "household exclusion" negates any duty to defend or indemnify. The district court ruled in favor of State Farm and this appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1291.

*Standard of Review*

We review a district court's award of summary judgment under the same standards that the district court applied to determine whether summary judgment was appropriate. *Herrera v. Millsap*, 862 F.2d 1157, 1159 (5th Cir. 1989). Summary judgment is appropriate if the record discloses "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

3

matter of law." Fed.R.Civ.P. 56(c). Therefore, the summary judgment will be affirmed only if we are "convinced after an independent review of the record, that 'there is no genuine issue as to any material fact' and that 'the movant is entitled to judgment as a matter of law.'" *Id.*

*Discussion*

A. *The Policy*

The policy at issue provides

> If a claim is made or suit is brought against an **insured** for damages because of **bodily injury** . . . caused by an **occurrence** to which this coverage applies, we [State Farm] will:
> 1. pay up to our limit of liability for the damages for which the **insured** is legally liable.
> 2. provide a defense at our expense by counsel of our choice . . .

The policy also states

> In this policy, "you" and "your" refer to the "named insured" shown on the declarations page and the spouse if a resident of the same household.
>
> \*               \*               \*               \*
>
> "**Insured**" means you and residents of your household who are:
> a. your relatives; or
> b. other persons under the age of 21 and in the care of any person named above.

The following language sets forth what is commonly known as the "household exclusion"

> **Coverage C (Personal Liability)** does not apply to:
> e. **bodily injury** to you or an **insured** within the meaning of part a. or part b. of **insured** as defined.

Additionally, the policy contains a "severability clause" which provides that "[t]his insurance applies separately to each **insured**."

4

B. *Policy Interpretation*

In *Cicciarella v. Amica Mutual Insurance Company*, this Court set forth the method by which insurance policies are interpreted.

> In Texas, insurance policies are controlled by the rules of construction that are applicable to contracts generally. We will not rewrite the terms of the Policy; instead we enforce it as written. Our primary concern is to give effect to the intentions of the parties as expressed in the instrument. Thus, in interpreting the Policy, we construe all parts of the document together, giving effect to the intent of the parties. The determination whether terms are ambiguous is a question of law. A contract is ambiguous only 'when its meaning is uncertain and doubtful or it is reasonably susceptible of more than one meaning.' . . . . We interpret and construe insurance policies liberally in favor of the insured, especially when dealing with exceptions and words of limitation.

*Cicciarella v. Amica Mutual Ins. Co.,* 66 F.3d 764, 768 (5th Cir. 1995) (internal citations omitted).

C. *Is Diana Green an Insured?*

Jaclyn Green Keegan maintains that Diana Green is not an "insured" as defined in the policy because she did not reside with Russell Green at the time she was injured. Jaclyn Green Keegan claims the severability clause has the effect of providing separate policies of insurance to Russell and Linda Green. As such, Russell Green's separate policy would only exclude coverage for bodily injury to Russell Green, or residents of his household. Because Diana Green did not live with Russell Green, she would not be excluded under Russell Green's separate policy.

In *Walker v. Lubermans Mutual Casualty Company.*, 491 S.W.2d 696 (Tex.Civ.App.– Eastland, 1973, no writ), Mr. Walker was sued for the intentional

5

torts committed by his child. The insurance policy at issue in that case contained an exclusion for intentional harm caused by the insured, as well as a severability clause.[1]  In finding that Mr. Walker was covered under the policy, the court observed that the purpose of the severability clause was to sever the policy so that the acts of one insured would not deny coverage to another insured. *Id*. at 699. Specifically citing the language of the severability clause, the court further recognized the rule "that a policy extending coverage to several persons creates several obligations on the part of the insurer, so that a particular insured is not precluded from recovering merely because the claim of another insured is barred under the terms of an exclusion." *Id*. (citing *Arenson v. Nat'l Auto. & Cas. Ins. Co.*, 286 P.2d 816 (Cal. 1955)).

The rule cited by the court in *Walker* continues to be followed by Texas courts. *See Admiral Ins. Co. v. Trident NGL, Inc*., 988 S.W.2d 451 (Tex. App.–Houston [1st Dist.] 1999, writ denied) ( holding "[w]hen, as here, a policy has a 'severability of interests' clause, each insured against whom a claim is brought is treated as if it was the only insured under the policy"); *see also Western Heritage Ins. Co. v. Magic Years Learning Ctrs. and Child Care, Inc.*, 45 F.3d 85, 89 n.3 (5th Cir. 1995)(noting endorsement, which contained severability clause, "must be

---

[1]  The exclusion provision stated
    EXCLUSIONS– COVERAGE D [personal liability] shall not apply:
    5.     to bodily injury or property damage caused intentionally by or at the direction of the Insured; . . . .
    The severability clause provided that
    [t]he insurance afforded under Coverage D applies separately to each Insured against whom claim is made or suit is brought . . . .

6

applied separately to each insured").  Indeed, State Farm does not dispute that a severability clause serves to provide coverage in a situation like that presented in *Walker*, where there exists an "innocent" insured who did not commit the conduct excluded under the policy.

Jaclyn Green Keegan relies heavily on the Minnesota Supreme Court ruling in *American National Fire Insurance Company v. Estate of Fournelle*, 472 N.W.2d 292 (Minn. 1991).  In *Fournelle*, Robert and Joann Fournelle divorced and Robert Fournelle left the marital residence.  Mr. Fournelle returned to the marital residence to visit his sons and during the visit he shot and killed his sons and then committed suicide.  Joann Fournelle brought a wrongful death action against Robert Fournelle's estate.  Under the homeowner's policy issued by American National, both Robert and Joann Fournelle were named insureds.  The children were not named insureds, but the policy had a provision nearly identical to the one in the instant case having the effect of making the children insureds.

The exclusion at issue in the instant case is also almost identical to the one in *Fournelle*, as is the severability clause.[2]  The *Fournelle* court stated that "[t]o claim that the household exclusion applies because the children were residents of a named insured's household misconstrues not only the policy language, but also the doctrine

---

[2]  The provisions at issue in *Fournelle* are as follows:
Coverage E– Personal Liability, does not apply to
*                     *                     *
f.  bodily injury to you and any insured . . . .

Severability of Insurance.  This insurance applies separately to each insured.

of severability." The court continued noting

> American National [the insurer], as drafter of the policy, inserted the severability clause for some purpose. The policy states: 'This insurance applies separately to each insured.' A reasonable interpretation of these words leads to the obvious and singularly correct conclusion that each insured must be treated as if each were insured separately, applying exclusions individually as to the insured for whom coverage is sought.

The fact that the children resided with Joann Fournelle, a named insured, and otherwise qualify as insureds with reference to Joann Fournelle is "of no concern," because Mrs. Fournelle was not the insured seeking protection. The court concluded that because the children did not reside with Robert Fournelle at the time of their death, the policy afforded coverage. Jaclyn Green Keegan contends *Fournelle* is controlling. Like the children in *Fournelle*, Diana Green was not a resident of the named insured Russell Green's household at the time of her injuries. Diana Green is not seeking recovery from the named insured Linda Green, with whom she resided.

State Farm argues that the severability clause has no application to the household exclusion because the exclusion is drafted in terms of "an insured" rather than "the insured." State Farm claims that the term "an insured" has the same meaning as "any insured." It argues "the insured" does not refer to all insureds, but instead that "the term is used to refer to each insured as a separate and distinct individual apart from any and every other person who may be entitled to coverage." *Commercial Standard Ins. Co. v. American General Ins. Co.*, 455 S.W.2d 714, 721 (Tex. 1970). When a policy includes the phrases "an insured" or "any insured," State Farm contends that the intent is to deny coverage to anyone defined as an

8

insured, irrespective of the severability clause.  While State Farm recognizes that severability clauses function to spread protection to the limits of coverage, it states that they do not define who is an insured, nor do they negate bargained for exclusions.  Contrary to State Farms' position, there is no language in the policy to suggest that the severability clause is only applicable to the question of coverage for a co-insured who did not personally commit the act giving rise to liability.

State Farm relies upon a decision of the New Hampshire Supreme Court in *Sciaudone v. Steuk*, 512 A.2d 1108 (N.H. 1986), which addressed a set of facts similar to those in *Fournelle*.  The *Steuk* court found that the household exclusion denying coverage for bodily injury to "any insured" barred coverage for any liability.  The court summarily dismissed the severability clause argument that the policy must be construed as divisible, stating that "[w]hatever its effects may be in identifying the nature of an insured interest and the extent of coverage, the clause has nothing to do with identifying the insureds."  *Id*. at 1111.

Given the conflicting interplay between the definition of the term "insured," the meaning of the phrases "the insured" and "an insured," and the severability clause, we find as a matter of law that the policy language is ambiguous.  *See West American Ins. Co. v. Av & S*, 145 F.3d 1224 (10th Cir. 1998) (finding policy which contained exclusion referring to "any insured," as well as severability clause, was ambiguous).  State Farm's argument, in fact, supports this result.  Accordingly, we must adopt a construction of the policy that affords coverage to the insured.  *See Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991)

9

(under Texas law, provisions inserted in insurance policy by insurer that exclude coverage are strictly construed against insurer if such provisions are subject to two reasonable constructions and where one interpretation favors coverage). Construing the policy favorably to the insured, we find that the severability clause treats each named insured separately. Under this interpretation, when the severability clause is read in conjunction with the household exclusion, the policy provides coverage to the insured.

In *United Fire & Casualty Company v. Reeder*, we noted that "[s]everability clauses also have been applied in connection with the family or household exclusion for 'bodily injury to you or an insured" and cited *Fournelle*. *United Fire & Cas. Co. v. Reeder*, 9 F.3d 15, 18 (5th Cir. 1993). Applying Louisiana law, we distinguished *Fournelle* stating "[t]he case at bar presents a materially different situation" in that coverage is sought for a claim "that is excluded by unambiguous policy language." Citing *Steuk*, we noted that in such a case "[t]he severability clause provides no succor to appellants." Because the policy language in the instant case is ambiguous, the severability clause is not accorded the same fate as the one in *Steuk* or *Reeder*.

*Fournelle* and *Steuk* support our finding that the policy is susceptible to more than one reasonable interpretation. *See State Farm Fire & Cas. Co. v. Reed*, 873 S.W.2d 698, 701 (Tex. 1993) (citing cases from various jurisdictions giving different interpretations of similar policy provision). In *Fournelle*, the court held that a reasonable interpretation of the severability clause lead to the conclusion that

10

the household exclusion did not apply to children who were residents of a named insured's home. The *Steuk* court, on the other hand, dismissed any application of the severability clause to an unambiguous policy definition of "insured." Strictly construing the policy language against the insurer and adopting the interpretation most favorable to the insured, we hold that coverage exists under the policy for Diana Green's injuries.

In view of our disposition of this case, it is not necessary for us to consider Plaintiffs' alternate argument.

For the foregoing reasons, the district court's decision is REVERSED and we RENDER judgment declaring that the policy of insurance issued by State Farm provides coverage for bodily injury to Diana Green and, therefore, State Farm has a duty to defend and indemnify Linda Green, as the administratrix of the estate of Russell Green, for such injuries.