Opinion issued March 27, 2003 
















In The
Court of Appeals
For The
First District of Texas




NO. 01-01-01111-CV




BITUMINOUS CASUALTY CORPORATION, Appellant

V.

KATHY MAXEY, INDIVIDUALLY AND AS NEXT FRIEND OF KRISTEN
TUCKER, AND KRISTEN TUCKER, Appellees




On Appeal from the 411th District Court
Trinity County, Texas
Trial Court Cause No. 17,996




O P I N I O N
          This is an appeal from a declaratory judgment holding that Bituminous
Casualty Corporation (“Bituminous”) is obligated to indemnify L & R Timber, Inc.,
and its employee, Billy Wiggins, for the judgment awarded in cause number 17,746
to Kathy Maxey, individually and as next friend of Kristen Tucker (collectively
referred to as “Maxey”). We reverse and render judgment in favor of Bituminous.
Facts and Procedural Background 
          Appellant, Bituminous, issued a commercial lines policy to two companies, L
& R Timber Co., Inc. and Triple L Express, Inc. That policy included, among other
coverages, general liability coverage pursuant to the terms of a commercial general
liability coverage form (“CGL”) contained in the policy. The CGL form is a standard
insurance industry form widely used across the nation to provide general liability
insurance to businesses. Grossly oversimplified, general liability insurance may
generally be said to cover an insured’s liability for damages accidentally caused to
third parties that are not covered under other, more specific types of liability
insurance policiesbusiness, automobile, and employer’s liability, for example.
          On May 26, 1999, Kristen Tucker was turning into a convenience store parking
lot when her car was hit from behind by a truck and trailer operated by Terrance Rose. 
Rose was employed by Triple L, which leased the truck from Mike Lout Trucking and
the trailer from L & R. L & R’s employee, Wiggins, was responsible for maintenance
of both the tractor/trailer and the brakes. Tucker suffered severe injuries resulting in
permanent paralysis of her lower extremities. Tucker sued L & R, Triple L, Rose, and
Wiggins for damages in the 411th Judicial District Court of Trinity County, Texas,
cause number 17,746, styled Maxey v. L & R Timber, Inc.
          Bituminous sought a declaratory judgment that it had no duty to defend or
indemnify Triple L and L & R. The trial court ruled that Bituminous had the duties
to defend and indemnify L & R, but not Triple L. Bituminous appealed to this Court,
and, on joint motion of the parties, we reversed and remanded to the trial court
without addressing the merits. Bituminous Cas. Corp. v. L & R Timber Co., Inc., No.
01-00-01333-CV (Tex. App.—Houston [1st Dist.] July 19, 2001, no pet.) (not
designated for publication).
          A settlement was subsequently reached between Maxey and Triple L and its
employee, Rose, wherein Triple L and Rose were released from liability for payment
of the full coverage amount of their automobile liability policy in the amount of
$1,500,000. Judgment was then entered on July 13, 2001, against L & R and Wiggins
for $1,000,000 (the Tucker judgment), the full amount of coverage under the
Bituminous CGL policy.
          The Tucker judgment stated:
The accident occurred when the vehicle Tucker was driving was struck
in the rear by a tractor/trailer. The tractor, a 1996 Mack, was owned by
Mike Lout Trucking, Inc. and under lease to and being used in the
furtherance of the business of [Triple L]. The trailer being pulled by the
tractor was a 1989 Nabors Open Box Van owned by [L & R], which was
leased to and being operated in the furtherance of the business of [Triple
L]. The tractor/trailer was being driven by [Rose], an employee of
Triple L, acting in the course and scope of his employment.
 
[L & R] was responsible for the maintenance and upkeep of the
tractor/trailer being operated by [Triple L] at the time of the accident. .
. . [Wiggins] was . . . the truck maintenance
supervisor/foreman/superintendent. . . . [Wiggins] was charged with the
responsibility of seeing that the tractor and trailer being operated by
[Triple L] at the time of the accident were maintained in a safe and
roadworthy condition. . . .
 
The accident occurred because the tractor/trailer was unable to safely
stop before striking the vehicle driven by Tucker, due to the fact that
three of the six braking systems on the tractor and two of the four
braking systems on the trailer were so far out of adjustment as to exceed
the minimum standards adhered to by the Federal Motor Carrier Safety
Administration, the Department of Transportation and the Texas
Department of Public Safety.
  
[L & R and Wiggins] were negligent . . . in the operation on the roads of
an improperly or inadequately maintained tractor and trailer. . . 

* * *
 
Each of these acts or omissions, singularly or in combination with the
others was a proximate cause of the accident and of [Tucker’s] injuries
and damages, in that the tractor and trailer were unable to safely stop
due to the poorly maintained brakes.

* * *
 
It is therefore ORDERED, ADJUDGED and DECREED that
Defendants L and R Timber, Inc. and Billy Wiggins are jointly and
severally liable to Plaintiffs Kathy Maxey and Kristen Tucker for the
total sum of $1,000,000.00 (one million dollars), inclusive of all pre-judgment interest.

* * *

          The court below found Bituminous had a duty to indemnify L & R and Wiggins
for the damages awarded by the judgment, and Bituminous appeals. Bituminous and
Maxey have stipulated that they are the only parties having a justiciable interest in the
issue of coverage under the CGL policy and that the sole issue presented to the trial
court was a duty to indemnify.
Issues
          Bituminous argues in three issues that (1) the trial court erred in declaring that
it has a duty to indemnify L & R and Wiggins for the Tucker judgment because the
auto exclusion clause in the CGL policy precludes coverage for damages for bodily
injury arising out of the conduct of “any insured”; (2) the “separation of insureds”
clause does not alter the auto exclusion clause so that the exclusion applies only to
damages caused by L & R’s own conduct; and (3) the trial court erred in denying
Bituminous’s motion for judgment on the stipulated facts and by granting judgment
in favor of Maxey. Because the first and second issues are interrelated, we address
them together. 
 
Standard of Review
          We review declaratory judgments under the same standards as other judgments
and decrees. City of Galveston v. Giles, 902 S.W.2d 167, 170 (Tex. App.—Houston
[1st Dist.] 1995, no writ). We look to the procedure used to resolve the issue at trial
to determine the standard of review on appeal. Id. Here, because the case was
resolved by stipulated facts, we review the propriety of the declaratory judgment
under the standards applied to judgments rendered upon stipulated facts. See id. at
170-71; Unauthorized Practice of Law Comm. v. Jansen, 816 S.W.2d 813, 814 (Tex.
App.—Houston [14th Dist.] 1991, writ denied) (case submitted on agreed statement
and on motion for summary judgment). If reversal is warranted, we render the
judgment the trial court should have rendered, unless a remand is necessary for
further proceedings. FDIC v. Projects Am. Corp., 828 S.W.2d 771, 772 (Tex.
App.—Texarkana 1992, writ denied). 
          Insurance policies are controlled by rules of interpretation and construction
applicable to contracts generally. National Union Fire Ins. Co. of Pittsburgh, Pa. v.
CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995). The primary concern of a court
in construing a written contract is to ascertain the true intent of the parties as
expressed in the instrument. Id. Terms in contracts are given their plain, ordinary,
and generally accepted meaning unless the contract itself shows that particular
definitions are used to replace that meaning. Western Reserve Life Ins. v. Meadows,
261 S.W.2d 554, 557 (Tex. 1953). If a written contract is so worded that it can be
given a definite or certain legal meaning, then it is not ambiguous. National Union
Fire Ins. Co. of Pittsburgh, Pa., 907 S.W.2d at 520. The interpretation of an
unambiguous contract is a question of law for the court. Perry v. Houston Indep. Sch.
Dist., 902 S.W.2d 544, 547 (Tex. App.—Houston [1st Dist.] 1995, writ dism’d
w.o.j.). If an insurance policy is ambiguous, however, it will be interpreted in favor
of the insured. Grain Dealers Mut. Ins. Co. v. McKee, 943 S.W.2d 455, 458 (Tex.
1997).
Discussion
The Auto Exclusion Clause
          Bituminous argues in its first issue that it is entitled to a judgment declaring
that it has no duty to indemnify L & R and Wiggins for the Tucker judgment because
the auto exclusion clause in the CGL policy precludes all coverage for the accident. 
          The auto exclusion clause in the CGL policy reads as follows:
          2. Exclusions
                    This insurance does not apply to:
                    .         .         .         .
g.Aircraft, Auto or Watercraft
“Bodily injury” or “property damage” arising out of the
ownership, maintenance, use or entrustment to others of
any aircraft, “auto” or watercraft owned or operated by or
rented or loaned to any insured. Use includes operation
and “loading or unloading”.
(Emphasis added.) An “auto” is defined in the CGL policy as “a land motor vehicle,
trailer or semitrailer designed for travel on public roads, including any attached
machinery or equipment.” 
          Section II of the CGL policy, “Who Is an Insured,” states, in relevant part, “If
you are designated in the Declarations as “[a]n organization other than a partnership
or joint venture, you are an insured.” The section also states,
Each of the following is also an insured:
a.Your “employees,” . . . but only for acts within the scope of their
employment by you or while performing duties related to the
conduct of your business.

CGL Policy, Section II. Both Triple L and L& R are identified in the “Declarations”
as “Named Insureds” on the CGL policy.
          Under the plain language of the auto exclusion clause and the definitions of “an
insured,” L & R and Triple L both are any insureds for purposes of the auto exclusion
clause. The trailer was owned by L & R and both the truck and trailer were
maintained by L & R. The truck and trailer were both leased to Triple L and were
both operated by Triple L and its employee, Rose. Both L & R and Triple L were
held to have proximately caused the accident by their acts and omissions. Both were
Named Insureds. Under a plain language reading, since the auto exclusion policy
states that the CGL policy does not apply to bodily injury “arising out of the
ownership, maintenance, use or entrustment to others of any . . . ‘auto’ . . . owned or
operated by or rented or loaned to any insured,” the auto exclusion clause applies,
excluding coverage for Tucker’s injury under the plain language of the CGL policy.
The Separation of Insureds Clause
          Maxey argues, however, that the “Separation of Insureds,” or severability of
interests, clause in the CGL policy requires that the policy be read as if L & R were
the only Named Insured shown on the declarations page. Maxey further argues that,
when the policy is read as if only L & R were the insured, then damages attributable
to Triple L are not excluded by the auto exclusion clause; only damages proximately
caused by L & R’s conduct are excluded; therefore, Bituminous is required to
indemnify L & R, the insured, for coverage of the damages caused by Triple L’s
conduct.
          The separation of insureds clause in Section IV of the CGL policy
(“Commercial General Liability Conditions”) reads as follows:
7.Separation of Insureds
 
Except with respect to the Limits of Insurance, and any rights or duties
specifically assigned in this Coverage Part to the first named Insured,
this insurance applies:
 
a.As if each Named Insured were the only Named Insured;
and
b.Separately to each insured against whom claim is made or
“suit” is brought.
          Maxey is correct in her assertion that, when an insurance policy has a
separation of insureds or severability of interests clause, each insured against whom
a claim is brought is treated as if it was the only insured under the policy. Admiral
Ins. Co. v. Trident NGL, Inc., 988 S.W.2d 451, 455-56 (Tex. App.—Houston [1st
Dist.] 1999, pet. denied). The intent of the severability clause is to provide each
insured with separate coverage, as if each were separately insured with a distinct
policy, subject to the liability limits of the policy. Utica Mut. Ins. Co. v. Emmco Ins.
Co., 243 N.W.2d 134, 142 (Minn. 1976). 
          The severability clause serves to provide coverage when there is an “innocent”
insured who did not commit the conduct excluded by the policy. State Farm Fire &
Cas. Ins. Co. v. Keegan, 209 F.3d 767, 769 (5th Cir. 2000) (construing Texas law;
citing Walker v. Lumbermens Mut. Cas. Co., 491 S.W.2d 696 (Tex. Civ.
App.—Eastland 1973, no writ)). In Walker, for example, the court of appeals held
that an exclusion that denied coverage for intentional acts of “the insured” did not
apply to the father of the son who committed the intentional acts; therefore, the father
was not denied coverage under the insurance policy. Walker, 491 S.W.2d at 699. 
Only the father had been sued for acts of the son; if the son had been sued and the
judgment had been against the son, the son would not have been covered. Id. at 698. 
          Here, Maxey asks us to find, similarly, that Triple L did not commit the acts for
which L & R was held liable. She argues that, even if a claim cannot be made on the
CGL policy for damages for which L & R was held liable, because of the auto
exclusion clause, a claim can still be made on the policy to recover those damages for
which Triple L was held liable; if “any insured” is construed only as “the insured who
is making the claim”—here, L & R—damage caused by anyone else—such as Triple
L—is not excluded by the auto exclusion clause. Triple L is “innocent” of L & R’s
conduct and the damages caused by that conduct.
          Maxey further contends that, unless the separation of insureds clause restricts
the exclusion of coverage of claims against “any insured” to the exclusion of
coverage of claims against the particular insured seeking coverage, namely L & R,
the CGL policy is ambiguous as to whose conduct is excluded, and the exclusion
clause must, therefore, be construed in favor of the insured. See Grain Dealers, 943
S.W.2d at 458 (an insurance contract that is subject to more than one reasonable
interpretation is ambiguous, and interpretation that most favors coverage for insured
will be adopted). Maxey refers us to cases from other states which have held that a
separation of insureds or severability of interests clause requires that the term “any
insured” in an exclusion in an insurance policy be interpreted to mean only the
insured who is seeking coverage.


 
          Bituminous replies that the overwhelming majority rule holds that the use of
the phrase “any insured” in an exclusion negates coverage for all insureds, despite
the inclusion of a separation of insureds clause.


 Bituminous argues that, even if we
read “any insured” as “L & R” for purposes of determining the insured against whom
a claim is being made, as the separation of insureds clause requires, it does not follow
that we must substitute “the insured” for “any insured” in interpreting the auto
exclusion clause.
Effect of a Separation of Insureds Clause on Exclusions
          This is apparently a case of first impression under Texas law regarding the
application of a separation of insureds clause to a policy provision that refers to “any
insured.” However, Texas courts have construed the applicability of a separation of
insureds clause to a policy provision that refers to “the insured.”
          In Commercial Standard Insurance Co. v. American General Insurance Co.,
455 S.W.2d 714 (Tex. 1970), the Texas Supreme Court considered the effect of a
similar “severability of interests” clause on an employee exclusion for “the insured.” 
There, a general contractor’s employees were injured when a truck crane owned and
operated by an insured subcontractor collapsed. The general contractor was an
additional insured under the subcontractor’s policy. The policy contained an
exclusion for bodily injury to any employee of “the insured,” and a severability of
interests clause. The subcontractor demanded that American General assume liability
under the insurance policy.
          The Court held that the exclusion did not apply to the subcontractor because
of the severability of interests clause, and therefore, the insurance policy did afford
coverage to the subcontractor. Id. at 721-22. In so holding, the court wrote:
the term “the insured” as used in this policy must be examined by first
applying the “severability of interests” test. “The insured” does not refer
to all insureds; rather the term is used to refer to each insured as a
separate and distinct individual apart from any and every other person
who may be entitled to coverage thereunder. When a claim is made
against one who is an “insured” under the policy, the latter is “the
insured” for the purpose of determining the company’s obligations with
respect to such claim.

Id. at 721. Although the general contractor was “an insured” under the policy, the
injury to the general contractor’s employees did not fall within the exclusion for
bodily injury to employees of “the insured,” when “the insured” requesting coverage
was the subcontractor who was not the injured employees’ employer. Id. at 715, 721-22. However, the court did not address the application of a severability of interests,
or separation of insureds, clause to an exclusion referencing “any insured.”
          In King v. Dallas Fire Ins. Co., 85 S.W.3d 185 (Tex. 2002), the Texas Supreme
Court again interpreted the separation of insureds clause in a commercial liability
policy. The separation of insureds clause was being applied to an expected or
intended injury exclusion which again contained the term “the insured.” Id. at 188. 
The Court determined that the separation of insureds clause applied to the exclusion,
and therefore King was the only insured excluded. Id. 
          We have found only one reported decision that has construed the term “any
insured” under Texas law in the context of an exclusion in an insurance policy
containing a separation of insureds clause. The Federal District Court for the Eastern
District of Louisiana, applying Texas law, agreed with the majority rule in holding
that, despite the separation of insureds or severability of interests clause, the 
exclusion of “any insured” meant the exclusion of all persons named as insureds in
the policy, not just the insured making the claim. Petticrew v. ABB Lummus Global,
Inc., 53 F. Supp. 2d 864, 871 (E.D. La. 1999).
          In Petticrew, Dickson GMP International, a subcontractor under a contract
between ABB Lummus Global, Inc. and Mobil Corporation for construction of an oil
platform, had agreed to secure insurance coverage for the project, including a CGL
policy, and to name ABB and Mobil as additional insureds. The CGL policy
excluded liability for damages for bodily injury arising out of the use of any
watercraft “owned or operated by or rented or loaned to any Insured” or “operated by
any person in the course of his employment by any Insured.” Id. at 870. Petticrew,
an employee of Dickson who was under the supervision of ABB, was being lifted in
a personnel basket to a barge from a workboat used to transport workers from the
drilling platform to the barge when the operator released the basket too soon, injuring
him. ABB asserted that, because the policy contained a severability of interests
clause, each insured must be treated differently; thus, since Petticrew was not an
employee of ABB, the insured that caused the accident, the exclusion of damages
incurred by “any insured” did not apply, and Petticrew’s injuries were covered
liabilities of the policy. Id. at 871. The court held, however, that Petticrew was
“clearly the employee of the named insured, Dickson, and thus, the “employee of any
insured” language excluded coverage to ABB.” Id.
          The Petticrew court did not explain its reasoning, but it seems clearly to have
relied on a natural reading of the plain language of the exclusion and the definition
of “an Insured” in the policy as “any person or organization qualifying as an Insured
in the Person Insured provision of this policy.” Id. at 870 n.48 (emphasis added). 
Likewise, Section II of the CGL policy in this case, defining “an insured,”
specifically states, “If you are listed in the Declarations as an organization . . . , you
are an insured”; and it specifically includes within the definition of “an insured” the
employees of an insured acting within the scope of their employment. (Emphasis
added). The auto exclusion clause expressly excludes coverage for “‘bodily injury
. . . arising out of the ownership, maintenance, use or entrustment to others of any .
. . ‘auto’ . . . owned or operated by or rented or loaned to any insured.” (Emphasis
added).
          The language of a contract should be given its plain grammatical meaning
unless it definitely appears that the intention of the parties would thereby be defeated. 
Reilly v. Rangers Mgmt., Inc., 727 S.W.2d 527, 529 (Tex. 1987). Every clause of a
contract has some effect; and a reasonable interpretation is preferable to one that is
unreasonable. Ace Ins. Co. v. Zurich Am. Ins. Co., 59 S.W.3d 424, 428 (Tex.
App.—Houston [1st Dist.] 2001, pet. denied). In construing a contract, the court
considers how a reasonable person would have used and understood the language by
taking into account the circumstances under which the contract was negotiated and
the purposes the parties intended to accomplish. Mobil Exploration & Producing
U.S., Inc. v. Dover Energy Exploration, L.L.C., 56 S.W.3d 772, 776 (Tex.
App.—Houston [14th Dist.] 2001, no pet.). Even if a policy phrase can reasonably
be interpreted in more than one way, it must be interpreted in accordance with the
objectively reasonable expectations of the insured. California Cas. Ins. Co., 56 Cal. 
Rptr. 2d at 443-44. A party’s reasonable expectation of coverage is a question of law,
not fact. Id. at 444. To determine whether coverage is consistent with an insured’s
reasonable expectations, the court must interpret the language in context with respect
to its function in the policy. Id. In particular, the unambiguous term “any insured” 
“should not be misshaped through an overreading of the separation of insureds
clause.” Oaks, 653 So. 2d at 168. Finally, words used in one part of a contract are,
as a general rule, deemed to have been used in the same sense in another part of the
contract if nothing in the context indicates otherwise. Gonzalez v. Mission Am. Ins.
Co., 795 S.W.2d 734, 736 (Tex. 1990). 
          Here, nothing in the CGL policy indicates that “any insured” is to be construed
in the text of the policy differently from the way “an insured” is defined in the
declarations; therefore, we find that they should be construed the same. The only
effect of the separation of insureds clause is to alter the meaning of the term “the
insured” to reflect who is seeking coverage. See American Nat’l Fire Ins. Co. v.
Estate of Fournelle, 472 N.W.2d 292, 294 (Minn. 1991); Michael Carbone, Inc., 937
F. Supp. at 420. 
          The effect of the separation of insureds clause on a particular exclusion in an
insurance contract thus depends on the terms of that exclusion. Petticrew, 53 F.
Supp. 2d at 871; Stewart Title Guar. Co. v. Kiefer, 984 F. Supp. 988, 996 (E.D. La.
1997).


 If the exclusion clause uses the term “the insured,” application of the
separation of insureds clause requires that the term be interpreted as referring only to
the insured against whom a claim is being made under the policy. Commercial
Standard Ins. Co., 455 S.W.2d at 721. If, however, the exclusion clause uses the term
“any insured,” then application of the separation of insureds clause has no effect on
the exclusion clause; a claim made against any insured is excluded. Petticrew, 53 F.
Supp. 2d at 871; Michael Carbone, Inc., 937 F. Supp. at 418, 420. To hold otherwise
would collapse the distinction between the terms “the insured” and “any insured” in
an insurance policy exclusion clause, making the distinction meaningless. It would
also alter the plain language of the clause, frustrating the reasonable expectations of
the parties when contracting for insurance. 
          Construing the term “any” the same as the word “the” in an exclusion clause 
when an insurance policy contains a separation of insureds or severability of interests
clause would require a tortured reading of the terms of the policy. It would also
expand liability beyond that bargained for by a reasonable person who followed the
plain language of the policy and would invite collusion among insureds, whereby
each could make a claim for coverage of damages caused by any other. We should
not give the terms of a contract such an expansive reading without a definite
expression of the parties’ intent that we do so. See Reilly, 727 S.W.2d at 529-30.



          We hold that, because the auto exclusion clause in Bituminous’ CGL policy
excludes coverage for “‘bodily injury’ . . . arising out of the ownership, maintenance,
use or entrustment to other of any. . . ‘auto’ . . . owned or operated by or rented or
loaned to ‘any insured,’” the clause excludes coverage for bodily injury arising out
of any conduct within the scope of the exclusion by any entity or person insured by
the policy, regardless of which insured is seeking coverage. Since Tucker’s injury
arose from maintenance of the truck and trailer by L & R, a named insured, and its
employee Wiggins, also an insured, as well as from the operation of the vehicle by
Rose, an employee of Triple L, also a named insured, the auto exclusion clause
applies. Under the plain language of the auto exclusion clause, Bituminous has no
duty to indemnify L & R or Wiggins for liability for Tucker’s injuries, regardless of
whether Tucker’s injuries were caused by L&R’s conduct, or Triple L’s, or both. 
Bituminous has no duty to indemnify any insured because the auto exclusion clause
excludes all of the insureds from coverage, regardless of which insured makes a claim
against the policy.
Concurrent Causation
          Finally, Maxey makes an argument for coverage under the “concurrent
causation” doctrine. The “concurrent causation doctrine” states that an insurer
escapes liability through an exclusion in a policy “only when a covered peril and an
excluded peril concurrently cause a loss . . . . Where a loss, however, is caused by a
covered peril and an excluded peril that are independent causes of the loss, the insurer
is liable.” Guaranty Nat’l Ins. Co. v. N. River Ins. Co., 909 F.2d 133, 137 (5th Cir.);
see also Duncanville Diagnostic Ctr., Inc. v. Atlantic Lloyd’s Ins. Co. of Tex., 875
S.W.2d 788, 791 (Tex. App.—Eastland 1994, writ denied); Centennial Ins. Co. v.
Hartford Acc. & Indem. Co., 821 S.W.2d 192, 194 (Tex. App.—Houston [14th Dist.]
1991, no writ). 
          Maxey contends that L & R’s negligent maintenance of the brakes on the truck
and the trailer and the operation of the truck by Rose were separate and independent
causes of Tucker’s injuries. The judgment against L & R and Wiggins found that the
accident was proximately caused both by Rose’s failure to stop in time and by the
brakes of both the truck and the trailer being out of proper adjustment because of L
& R’s and Wiggins’s negligence in maintaining the brakes, which contributed to
Rose’s inability to stop. Thus L & R’s and Wiggins’s negligent maintenance and
Triple L’s negligent operation of the truck were not separate and independent causes
of the accident. 
          We sustain Bituminous’s first and second issues.
          Because our ruling on Bituminous’s first and second issues is dispositive of
this case, its third issue is moot.
Conclusion
          We reverse the judgment of the trial court and render judgment that Bituminous
is not obligated to indemnify L & R Timber, Inc., and its employee, Billy Wiggins.
 
 
                                                             Evelyn V. Keyes
                                                             Justice

Panel consists of Justice Hedges, Keyes, and Duggan.